## THIRD NAT. BANK OF BUFFALO *v.* CORNES *et al.*

(*Supreme Court, Special Term, Monroe County.* March 29, 1889.)

1. REFERENCE—POWER OF REFEREE—INTERLOCUTORY JUDGMENT.
    On the trial of a cause the court held that the action could be maintained, and referred the matter for a statement of accounts, with a direction that the referee should report "as to the final judgment to be entered by the court herein." It was also provided that on the filing of the report either party might apply "for such further directions, order, or judgment as shall be just," and that the question as to costs and disbursements should be reserved until the final determination of the action, and an interlocutory judgment was entered accordingly. *Held,* not a final decision that plaintiff should have judgment in the action, which would require the referee so to find.

2. FRAUDULENT CONVEYANCES—RIGHTS OF CREDITORS—AGREEMENT TO SUPPORT.
    Where a transfer by a debtor of his property to his sister in consideration of a home and support to be furnished by her for life has been held, in an action by a creditor to set it aside, to be untainted by fraud, the creditor cannot recover from the grantee the value to the debtor of her agreement to support him.

Action by the Third National Bank of Buffalo against Lucien T. Cornes and another. Defendants move to confirm the report of the referee after an interlocutory judgment.

*A. Moot,* for plaintiff.    *F. R. Perkins,* for defendants.

RUMSEY, J. This cause was tried at the equity term in April, 1888. The decision of the court, after finding the facts, stated as conclusions of law that the statute of limitations had not run against the plaintiff's claim, and that a

former judgment between the same parties was not a bar in this action. The next and last conclusion of law was that the cause of action stated in the complaint can be maintained. The decision then referred it to a referee to state an account between the two defendants, giving minute directions how it should be stated. Then followed a direction that the referee should report "as to the final judgment to be entered by the court herein;" and that "upon the making and filing of such report either party hereto be at liberty to apply to this court for such further directions, order, or judgment as shall be just in the premises, and for such disposition as to the costs and disbursements of this action as shall be just in the premises; the question of who shall be allowed costs and disbursements in this action, and if any party shall be allowed costs and disbursements, being reserved until the final determination of this action." An interlocutory judgment was entered in accordance with the terms of this decision, and, the report of the referee having been made after it, the defendants now move for judgment.

The referee has taken and stated the account, as directed. Upon the question as to the final judgment to be entered, he has reported that it should be for the defendant. As the interlocutory judgment determines that the action can be maintained, it would seem that there was no little inconsistency between that and the conclusion of the referee, and that such a conclusion was in violation of the rule that when a referee is appointed by an interlocutory judgment, the adjudication of the judgment is binding upon him. Were that the case, the duty of the court to refuse to confirm the report would be plain. But upon careful study of the decision I think it cannot be said to finally decide that the plaintiff shall have judgment in the action. The decision expressly reserves the questions what final judgment shall be entered, and which party shall have costs, and gives to either party leave to apply for such judgment as may be just. It is not necessary that I should try to discover what weight shall be given to the abstract proposition that the cause of action can be maintained. It is sufficient that the questions what final judgment shall be entered, and who shall have costs, are reserved till this time. No exceptions have been filed to the report of the referee, but I am inclined to think it was not necessary in this case. *Matthews* v. *Murchison,* 14 Abb. N. C. 512, note.

The first—indeed, the only—question presented by the report is whether upon all the facts found judgment for any sort of relief to the plaintiff can be entered. In deciding this question, it is of great importance to remember that there was no fraud in the transaction between Cornes and Mrs. Shoemaker. That has been established in one action [1] in which the plaintiff sued them, and is found as a fact in this case. Any relief which the plaintiff gets must be given upon the theory that the contract between the parties is valid, and made in good faith. The relief must therefore be granted, if at all, by carrying the contract into effect for the benefit of the plaintiff, or by subrogating the plaintiff to the place and right of Cornes in it. Nothing else is suggested by the plaintiff. The contract, as found by the decision and as established by the former judgment, is that Mrs. Shoemaker, in consideration of the conveyance of the premises described in the complaint, should from that time furnish a home for said Cornes, and provide for him. When the conveyance was made, the title to the premises passed to Mrs. Shoemaker, and Cornes had, instead of it, her agreement as above. He has nothing else. He took back no mortgage to secure the performance of the contract on the part of Mrs. Shoemaker. The law does not give him any lien upon the land to secure it. The consideration of the land was Mrs. Shoemaker's contract to furnish a home for him, and provide for him. A grantor's lien is only permitted upon land to secure the purchase price in money, and never to secure the performance of any personal

[1] 8 N. E. Rep. 42.

covenant other than for the payment of money, which is taken as a consideration for the conveyance. 3 Pom. Eq. Jur. § 1251; *McKillip* v. *McKillip,* 8 Barb. 552; *Parrott* v. *Sweetland,* 3 Mylne & K. 655.  Mrs. Shoemaker was therefore, after the conveyance, the absolute owner of the property, free from any lien of Cornes.  She might have sold it, had she seen fit, the same day. All that Cornes has is her personal covenant.  As Cornes has no lien on the land, and there was no fraud in the transaction, the plaintiff cannot claim a lien on the land, but must take, if anything, only the value of the personal covenant of Mrs. Shoemaker.  Neither can the plaintiff establish a constructive trust against this land in the hands of Mrs. Shoemaker for the payment of its debt.  Such a trust is only created where there is on the part of the trustee actual or constructive fraud, and that has been held not to° exist in this case.  1 Perry, Trusts, § 168.  The plaintiff, as has been adjudged, cannot set aside the contract.  The only relief, therefore, as I have said, which the plaintiff can have, can be obtained only through Mrs. Shoemaker's personal covenant, which is simply to furnish Cornes a home, and to provide for him. This she can be called upon to do only at her own house, so long as she has such a place to do it.  *McKillip* v. *McKillip, supra.*  Cornes cannot call upon her to pay any money, nor to provide for him at any other place.  As long as she furnishes him a home, and provides for him as she agrees, she performs her agreement.  So the contract is personal to Cornes.  Mrs. Shoemaker cannot be required to perform these services for any one else.  If it were assigned, the assignee could not ask or receive the performance of it.  The plaintiff could not, even if it were a natural person, be put into Cornes' place so as to receive from Mrs. Shoemaker the home and care which she has agreed to furnish to Cornes.  But the plaintiff claims that it is entitled to have the money value of the contract.  Why?  Here again we must bear in mind that there is no fraud.  Upon what principle, in the absence of fraud, can Mrs. Shoemaker be required to do anything under this contract, except what she has agreed to do?  She has not promised to pay money, but to do a personal act for her brother.  So long as she does that she performs on her part.  If she refused there is no doubt that Cornes might recover damages for the breach of her contract, and the value of the services would be the measure of his damages.  *Dresser* v. *Dresser,* 35 Barb. 573.  But she has not refused.  She is not only ready to perform, but she is performing.  By what authority can the court substitute for the contract which she made another, of an entirely different character?  If this were a contract to pay money or to transfer property, there is no doubt that the court could seize upon it and apply it to the plaintiff's debt.  But in doing that the court would only compel Mrs. Shoemaker to do just what she had agreed to do, diverting the proceeds of the contract from the debtor to the creditor.  What power or control has the court over Mrs. Shoemaker than to compel her to do what she agreed, and where is the power to make her do something else?  I have been unable to discover any answer to this question, when the fact of fraud is eliminated from the case.  In *Tripp* v. *Childs,* 14 Barb. 85, the court set aside a contract by which a professional man in large practice gave up all his earnings in consideration of his support; and in *Robinson* v. *Stewart,* 10 N. Y. 189, a contract by which an aged man conveyed his property to his son to provide for his support was also set aside. But both these cases went on the ground that the contract was fraudulent as to creditors, and therefore void.  Here the fact of fraudulent intent does not exist.  I have looked in vain through the multitudinous reports to find any case where the court has assumed, in the absence of fraud, to change or set aside a contract for the benefit of a creditor of one of the parties, or has compelled one of the contracting parties, who was ready and able to perform, to do something other than what he was bound by his contract to do.  I think that, in view of the facts and the permission reserved in the decision for either party to apply for judgment, the conclusion of the referee, that the complaint

should be dismissed, should be confirmed. By the express terms of the interlocutory judgment the determination of the question of costs, and to which party costs shall be allowed, is reserved until the coming in of the referee's report. The rule is that costs should be given to the successful party. *Garr* v. *Bright,* 1 Barb. Ch. 157. There is nothing in this case to take it out of the operation of the general rule. The defendants, therefore, must have their costs of the action.